IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ALBERT ADAMCYK,

          Plaintiff,

v.

CRISTINE VINYARD,
DR. SHAH,
DR. CALDWELL,
PAM SESSIONS,
WEXFORD HEALTH SOURCES, INC.,
STEVEN BOWMN,
DR. MYERS, and
JANE DOE 1,

          Defendants.

Case No. 24-cv-02237-SPM

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on a Motion for Leave to File an Amended and Supplemental Complaint filed by Plaintiff Albert Adamcyk. (Doc. 68).

### BACKGROUND

Plaintiff Albert Adamcyk, an inmate within the Illinois Department of Corrections currently housed at Centralia Correctional Center, filed this lawsuit pro se pursuant to 42 U.S.C. §1983 alleging violations of his constitutional rights and Illinois state law. (Docs. 1, 18). In the Complaint, Plaintiff alleges that since August 2020 he has been denied constitutionally adequate care for his carpel tunnel syndrome and associated pain. (Doc. 1). After reviewing the Complaint pursuant to Section 1915A, Plaintiff is prosecuting the following count:

Count 1:     Eighth Amendment claim against Wexford Health Sources, Inc., Vinyard, Shah, Myers, Jane Doe 1, Caldwell, and Sessions for

Page 1 of 13

> deliberate indifference to Plaintiff's serious medical needs concerning carpal tunnel syndrome in both hands and associated symptoms.

(Doc. 18). Medical Director Bowman is a defendant in his official capacity only for the purpose of implementing any injunctive relief that may be ordered. (*Id.* at p. 13).

On July 25, 2025, Plaintiff filed a Motion for Leave to File an Amended and Supplemental Complaint. (Doc. 68). Plaintiff seeks to amend in order to identify Jane Doe 1 as Kelly Helpingstine, add claims against a new defendant, Dr. Arora, and to modify his request for relief. (*Id.* at p. 1-2). Defendants Vinyard and Bowman filed a response in opposition to the Motion. (Doc. 69). Defendants argue that because Plaintiff seeks to amend only to add declaratory relief that is duplicative of his other substantive claims, the Motion should be denied. (*Id.* at p. 1-2).

### MOTION FOR LEAVE TO AMEND

Federal Rule of Civil Procedure 15(a) provides that a party may amend a pleading and that leave to amend should be freely given "when justice so requires." The Seventh Circuit maintains a liberal attitude toward the amendment of pleadings "so that cases may be decided on the merits and not on the basis of technicalities." *Stern v. U.S. Gypsum, Inc.*, 547 F.2d 1329, 1334 (7th Cir. 1977). Here, Plaintiff not only seeks to file an amended complaint in order to add to his request for declaratory relief, but he also amends his request for injunctive relief and asserts allegations against a newly named defendant. Thus, the proposed amended complaint is not unnecessarily duplicative. Additionally, Plaintiff's Motion is timely filed and will not prejudice Defendants, as merits discovery has not commenced. The Court therefore **GRANTS** the Motion for Leave to File an Amended Complaint. (Doc. 68). The Clerk of Court will be directed to file the proposed amended complaint as "the First Amended Complaint."[1]

---

[1] Although Plaintiff titles his proposed amended complaint as "Second Amended and Supplemental Complaint," it will be docketed as the First Amended Complaint. The previous proposed amended complaint was filed as a

The First Amended Complaint is still subject to review under 28 U.S.C. § 1915A. Pursuant to Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

**MERIT REVIEW OF THE FIRST AMENDED COMPLAINT**

In the First Amended Complaint, Plaintiff iterates his previous allegations that medical treatment for his carpal tunnel syndrome in both hands has been delayed and denied while at Centralia Correctional Center (Centralia). The facts asserted do not vary significantly from those in the original Complaint, but the Court restates them below:

On August 24, 2020, Plaintiff was seen by Dr. Shah for nerve related pain and numbness in his right hand. (Doc. 68-1, p. 8). At the time, Plaintiff explained to Dr. Shah that about ten years previously, he had been tested for carpal tunnel syndrome (CTS), and the results were "borderline CTS." He also told Dr. Shah that his condition had become painful, but he was unable to go to "nurse sick call" because of the pandemic. Plaintiff asked if he could be seen by a hand specialist. Dr. Shah told Plaintiff, "Wexford will never approve this type of surgery." (*Id.*). Dr. Shah ordered x-rays for arthritis and a CTS brace for Plaintiff. The x-ray results showed no abnormalities in Plaintiff's right hand and "unremarkable right wrist and right thumb." (*Id.*).

On October 9, 2020, Plaintiff went to nurse sick call because the plastic of the CTS brace cut into his hand, causing additional pain and numbness. (Doc. 68-1, p. 9). On November 2, 2020, Dr. Pelegrin prescribed Plaintiff a new brace without plastic. Dr. Pelegrin recorded in Plaintiff's

---

Supplement on the docket. (*See* Doc. 58, 59).

medical chart that as of December 6, 2020, Plaintiff had received his new brace. (*Id.*).

For the next year, Plaintiff continued to complain about pain and numbness in his hand "only to go on deaf ears." (Doc. 68-1, p. 9). His nurse sick call requests were cancelled many times. (*Id.*).

On November 13, 2021, Plaintiff went to nurse sick call for pain and numbness in his right hand. (Doc. 68-1, p. 9). He describes his pain as a level 6 out of 10 and states that his hand was throbbing and stabbing intermittently. (*Id.*).

On November 15, 2021, Plaintiff was burned while working in the kitchen. (Doc. 68-1, p. 9). He states that boiling hot water accidentally poured on his right hand, which was gloved. Due to his CTS, he had a delayed reaction to the pain. By the time he realized that boiling water was pouring on his hand, he had incurred severe burns. When being treated by the nurse for the burns, Plaintiff asked if he could receive a medical permit for a "lay-in." The nurse told Plaintiff to ask the kitchen supervisor. Plaintiff's supervisor told him that without a "lay-in" permit from the doctor, Plaintiff would lose his job and receive disciplinary action if he did not show up for work. (*Id.*).

By March 22, 2022, Plaintiff's hand symptoms had worsened. (Doc. 68-1, p. 9-10). The pain and numbness were spreading to all his fingers, and he had a pins and needles sensation in his hand. (*Id.*). At nurse sick call, Plaintiff described his pain as a level 8 out of 10. Plaintiff told the nurse that his pain medication was ineffective. (*Id.* at p. 10). Plaintiff had an appointment on April 4, 2022, to see the doctor, but the appointment was canceled. (*Id.*).

On April 11, 2022, Plaintiff was seen by Physician Assistant Smith. (Doc. 68-1, p. 10). Smith evaluated Plaintiff's symptoms and ordered muscle rub. The rub was not helpful in treating Plaintiff's pain. It only decreased the swelling. (*Id.*).

On June 28, 2022, Plaintiff returned to nurse sick call and complained that his pain had reached a level 9 out of 10. (Doc. 68-1, p. 10). The nurse referred Plaintiff to the doctor and gave him ineffective pain medication. (*Id.*).

On July 28, 2022, Plaintiff was seen by a nurse practitioner for pain and numbness in his right hand. (Doc. 68-1, p. 10). The nurse practitioner examined Plaintiff and prescribed Voltaren, an arthritis medication. (*Id.*).

On August 22, 2022, Plaintiff injured his left hand when he tried to deflect a rogue softball. (Doc. 68-1, p. 10). The impact of the ball caused the middle finger to bend backwards "causing a lump in the middle of his left hand, and extreme pain." (*Id.*). On September 19, 2022, he was seen by Dr. Myers for pain and numbness he was now experiencing in both hands. (*Id.*). Dr. Myers ordered an x-ray for the newly injured left hand but did nothing for Plaintiff's right hand. (*Id.*).

Plaintiff returned to nurse sick call on September 21, 2022, for pain in his hands. (Doc. 68-1, p. 11). Plaintiff was seen by K. Helpingstine. Helpingstine sent Plaintiff back to his cell without treatment because two days before he had just been seen by Dr. Myers. (*Id.*).

On October 13, 2022, the pain in Plaintiff's right hand reached a level 9.5 out of 10. (Doc. 68-1, p. 11). Plaintiff returned to nurse sick call. The nurse noted that Plaintiff had a "golf ball size" lump in the middle of his left hand, and he could not make a fist. The nurse gave Plaintiff a short supply of ibuprofen and referred him to the doctor. (*Id.*).

On October 23, 2022, Plaintiff had an appointment scheduled with the doctor. (Doc. 38-1, p. 11). Prior to the appointment, Plaintiff was told by Helpingstine that the appointment was for Plaintiff's rash and "not for his hands." Plaintiff explained that the rash had already healed and that his hands were causing him a lot of pain. Helpingstine told Plaintiff to return to his cell house, cancelled the appointment, and falsely recorded in the medical record that he refused to be seen.

(*Id.* at p. 11-12).

Plaintiff was seen by Dr. Caldwell on November 3, 2022. (Doc. 68-1, p. 12). Plaintiff told Dr. Caldwell about his "borderline CTS" diagnosis ten years prior. Dr. Caldwell noticed the lump on Plaintiff's left hand and noted that Plaintiff was already taking Voltaren. Dr. Caldwell did not refer Plaintiff to a specialist. (*Id.*).

On November 18, 2022, Plaintiff went to nurse sick call about the pain in his hands and numbness. (Doc. 68-1, p. 12). The nurse gave Plaintiff the same ineffective pain medication and referred Plaintiff to the doctor. (*Id.*). On December 6, 2022, Plaintiff returned to nurse sick call, and the nurse noted swelling in both hands. (*Id.* at p. 12-13). She also noticed that the x-rays showed signs of arthritis and that the Voltaren was not helping with Plaintiff's pain. (*Id.* at p. 13). The next day, Plaintiff was called to see Dr. Caldwell. Dr. Caldwell referred Plaintiff to an outside hand specialist. (*Id.*).

On January 13, 2023, Plaintiff sent a "kite" to the healthcare unit administrator, Christine Vinyard, asking when he would be sent out for his evaluation with the hand specialist. (Doc. 68-1, p. 13). Vinyard did not respond until two months later stating, "Grievance #E23-3-64 sent to Wexford DON/SA in regards to scheduling." (*Id.*).

Plaintiff was seen by an orthopedic surgeon, Dr. Mulhern, on January 27, 2023, who diagnosed Plaintiff as needing carpal tunnel release surgery. (Doc. 68-1, p. 13). On February 27, 2023, Plaintiff wrote the healthcare unit asking for the date that the surgery was scheduled and was told that no appointment had been made. (*Id.*).

On March 30, 2023, Plaintiff was seen by a nurse practitioner, who prescribed him naproxen. (Doc. 68-1, p. 14). Plaintiff states that this medicine helped alleviate some of his pain. (*Id.*).

On April 12, 2023, Plaintiff again wrote to the healthcare unit asking about his surgery. (Doc. 68-1, p. 14). Plaintiff received a response from Vinyard stating that she had sent the request to "Wexford schedules." On June 9, 2023, Plaintiff asked a nurse when his surgery was going to be scheduled, and the nurse told him that she was not allowed to tell him. (*Id.*).

Plaintiff saw Dr. Caldwell on June 14, 2023, for "hand pain arthritis." (Doc. 68-1, p. 14). Plaintiff asked for pain medication, and Dr. Caldwell would not give it to him. (*Id.* at p. 15). On July 22, 2023, Plaintiff returned to nurse sick call because his pain was unbearable, and the pain medication he was taking was not helping. (*Id.*). The nurse gave Plaintiff another short supply of ineffective pain medication. He went to nurse sick call again on August 28, 2023, for his pain. (*Id.*).

On September 11, 2023, Plaintiff was sent to see Dr. Mulhern for a pre-operation evaluation. (Doc. 68-1, p. 15-16). Dr. Mulhern recorded that Plaintiff needed surgery, as prescribed eight months previously, and gave Plaintiff a cortione shot for his left hand. (*Id.* at p. 16).

Plaintiff went to nurse sick call on September 17, 2023, for his constant hand pain. (Doc. 68-1, p.16). The nurse told Plaintiff that he could not be given pain medication before surgery. He went to nurse sick call again on September 30, 2023, for pain and was given a short supply of ibuprofen and Tylenol. At this point, Plaintiff asserts that his pain level was a 10 out of 10 and his hand felt like it was on fire. When he ran out of pain medicine, Plaintiff went back to nurse sick call on October 2, 2023. The nurse noticed "how swollen his right hand was." (*Id.*).

Plaintiff received surgery on his right hand on October 10, 2023. (Doc. 68-1, p. 16). Following the surgery, Plaintiff was housed in the infirmary at Centralia. Dr. Mulhern had prescribed Tylenol 3 for his pain for the first five days and then Tramadol as needed. The nurses at Centralia, however, only gave Plaintiff Tramadol, which was not as effective. (*Id.*).

Plaintiff had an appointment with Dr. Mulhern on October 23, 2023, to have his stitches removed. (Doc. 68-1, p. 16). During the appointment, Dr. Mulhern recommended caporal tunnel release surgery on Plaintiff's left hand. (*Id.* at p. 17). Dr. Mulhern did not give Plaintiff a cortisone shot because he wanted to perform surgery as soon as possible. (*Id.*).

At nurse sick call on November 30, 2023, Plaintiff asked about his surgery. (Doc. 68-1, p. 17). The nurse told Plaintiff that she would inquire with Pam Sessions to see if the referral had been processed. On December 6, 2023, Plaintiff was seen by Dr. Arora, at Centralia, for numbness he was still experiencing in his right hand. Dr. Arora prescribed Plaintiff's six months of Tylenol. Plaintiff, however, was only given a single month worth's of Tylenol and did not receive a prescription refill until July 2024. (*Id.*).

Plaintiff asked about his surgery again at nurse sick call on December 30, 2023. (Doc. 68-1, p. 17). Plaintiff had surgery on his left hand on January 26, 2024. According to Plaintiff, Dr. Mulher recommended that Plaintiff have six-month appointment for his left hand following surgery to see if he needed another cortisone shot for his left hand. When Plaintiff went to nurse sick call, the nurse told him that Dr. Mulhern wrote in his final report that Plaintiff did not need surgery. (*Id.*).

On July 2, 2024, Plaintiff wrote to Vinyard asking about the follow-up appointment. (Doc. 68-1, p. 18). She responded that she was checking on his appointment "and/or injection," and informed Plaintiff, "We can release your medical hold if you do not want to pursue this follow-up." Plaintiff responded that he did not want to "release the medical hold" because he was still having issues with his left hand and experiencing pain in the center of his left hand. (*Id.*).

On January 23, 2025, Plaintiff had an appointment with Dr. Arora "for multiple medical issues, including his need for the six month follow-up." (Doc. 68-1, p. 18). Dr. Arora told Plaintiff

that she was not going to address the follow-up appointment issue because "Wexford does not like her to do to many things in one visit." (*Id.*).

As of writing the First Amended Complaint on June 26, 2025, Plaintiff had still not received a follow-up appointment with Dr. Mulhern. (Doc. 68-1, p. 18). Plaintiff states that according to medical records, Dr. Arora has misread Dr. Mulhern's recommendation ignoring his statement that "if that does recur that he should return for a follow-up." (*Id.* at p. 18-19). Plaintiff asserts that he still has pain in the middle his left hand where the lump is located, and the numbness he is experiencing in his right hand is permanent due to the delay in receiving surgery. (*Id.* at p. 18).

As stated, the allegations in the First Amended Complaint are substantially similar to those in the Complaint. Therefore, for reasons set forth in the Court's previous Merit Review Order (Doc. 18, p. 7-8), the Court finds that Plaintiff has again stated an Eighth Amendment deliberate indifference claim against Wexford, Vinyard, Shah, Myers, Caldwell, Helpingstine,[2] and Sessions.

Medical Director Bowman will remain a defendant in his official capacity only for the purpose of implementing any injunctive relief that may be ordered. (Doc. 18, p. 11; Doc. 68-1, p. 3). To the extent Plaintiff seeks injunctive relief from Vinyard, this claim is dismissed. (*See* Doc. 68-1, p. 22). Plaintiff is suing Vinyard in her individual capacity only, and Section 1983 "does not permit injunctive relief against state officials sued in their individual" capacities. *Greenawalt v. Ind. Dept. of Corr.,* 397 F. 3d 587, 589 (7th Cir. 2005).

As for newly named Dr. Arora, Plaintiff asserts that Dr. Arora treated him on December 6, 2023, and gave him a six-month prescription for Tylenol. (Doc. 68-1, p. 17). Plaintiff claims that

---

[2] Jane Doe 1 has been identified as Kelly Helpingstine.

he only received the medication for a month and then had to wait until July for a refill. (*Id.*). He argues that because he was denied pain medication, he experienced unnecessary pain and suffering. (*Id.*). Plaintiff saw Dr. Arora again on January 23, 2025, but Dr. Arora would not address his request for a follow-up appointment with Dr. Mulhern because of Wexford policy, and she negligently misread Dr. Mulhern's report resulting in Plaintiff not being referred for his follow-up appointment. (*Id.* at p. 18-19). These allegations are not sufficient to establish deliberate indifference on the part of Dr. Arora.

As this Court has discussed, to state a claim for deliberate indifference, an inmate must put forward facts implicating both an "objective and subjective element, namely that: (1) an objectively serious medical need was deprived; and (2) the official knew that the risk of injury was substantial but nevertheless failed to take reasonable measures to prevent it." *See Chapman v. Keltner,* 241 F.3d 842, 845 (citing *Henderson v. Sheahan,* 196 F.3d 839, 845 (7th Cir. 1999)). Deliberate indifference is a high bar. "Neither negligence nor even gross negligence is sufficient basis for liability; rather, liability attaches only if the conduct is intentional or criminally reckless." *Id*. (citing *Salazar v. City of Chi*., 940 F. 2d 233, 238 (7th Cir. 1991)).

Here, there is nothing from which the Court can plausibly infer that Dr. Arora knew that Plaintiff only received a month's worth of Tylenol, rather than the six-month dosage she had prescribed on December 6, 2023, and that as a result his pain went untreated for several months. Without knowledge of Plaintiff's medication needs, she could not have disregarded a serious risk to his health.

Plaintiff's allegations that Dr. Arora acted with deliberate indifference by misreading Dr. Mulhern's post-surgery report and for not referring him to a follow-up appointment also do not amount to deliberate indifference. In Plaintiff's exhibits submitted with the First Amended

Complaint, Dr. Mulher recorded on February 8, 2024:

> I think he has recovered very well from both carpal tunnel releases…I do not think any further follow-up is necessary now that the median nerve has been decompressed I would not anticipate further symptoms into the hand. We have discussed the possibility of recurrent triggering of the middle finger however and I recommended that if that does recur that he should return for a follow-up and we would try at least 1 more local injection before considering surgical trigger finger release. Otherwise I think his result from the right side is very good and no further intervention will be necessary so we can discharge him from care.

(Doc. 68-1, p. 48). According to this exhibit, Dr. Mulher only recommended a follow-up visit if Plaintiff experienced "recurrent triggering of the middle finger." (*Id.*). Plaintiff does not complain of trigger finger, only of pain in the middle of his left hand and numbness in his right hand. Dr. Mulher recommends discharging Plaintiff from care. Thus, Dr. Arora did not disregard Dr. Mulher's recommendations and act with deliberate indifference by not referring Plaintiff for a follow-up appointment or addressing Plaintiff's follow-up appointment request at the January 23, 2025 appointment. Because Plaintiff has failed to state an Eighth Amendment claim against Dr. Arora, the Court will not exercise supplemental jurisdiction over Plaintiff's negligence claim against her. Plaintiff's negligence claim against Dr. Arora, designated as Count 2 in the First Amended Complaint, is dismissed. (*Id.* at p. 21).

In summary, Plaintiff's First Amended Complaint survives review pursuant to Section 1915A. Plaintiff is proceeding on the following count:

**Count 1:**   Eighth Amendment claim against Wexford Health Sources, Inc., Vinyard, Shah, Myers, Caldwell, Sessions, and Helpingstine for deliberate indifference to Plaintiff's serious medical needs concerning carpal tunnel syndrome in both hands and associated symptoms.

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the First Amended Complaint but not specified above should be considered dismissed without**

**prejudice as inadequately pled under the *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) pleading standard.**

### PENDING MOTIONS

Because Plaintiff has identified Jane Doe 1 in the First Amended Complaint as Kelly Helpingstine, the Motion seeking to substitute the unknown defendant is **DENIED as moot**. (Doc. 78).

The Motion for Status is **GRANTED**. (Doc. 80). Now that the Court has reviewed the First Amended Complaint, and the allegations against Defendants remain substantially the same, the First Amended Complaint does not moot the arguments raised in the Motion for Summary Judgement filed by Myers, Sessions, Shah, and Wexford. (Doc. 71). Plaintiff's Motion for Extension of Time is **GRANTED**, and his response in opposition is **DEEMED** timely filed. (Doc. 75, 76). The Motion for Summary Judgment has therefore been fully briefed and is awaiting a ruling by the Court.

The stay on the deadline to file a dispositive motion on the issue of exhaustion imposed for Defendants Bowman and Vinyard is **LIFTED**. (Doc. 74). Defendants Bowman and Vinyard shall have until **April 15, 2026,** to file a motion for summary judgment on the issue of exhaustion of administrative remedies.

### DISPOSITION

For the reasons stated above, pursuant to Rules 15 and 16 and after review of the proposed amended complaint pursuant to 28 U.S.C. § 1915A, the Court **GRANTS** the Motion for Leave to File an Amended Complaint (Doc. 68). The Clerk is **DIRECTED** to file the proposed amended complaint (Doc. 68-1) submitted to the Court on July 25, 2025, as the "First Amended Complaint."

The Clerk of Court is further **DIRECTED** to serve process on Kelly Helpingstine in

accordance with the original Merit Review Order at Doc. 18. Because there are no surviving claims against Defendant Dr. Arora, the Clerk shall **TERMINATE** her as a party.

All Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues as stated in this merit review order and the original Merit Review Order of the Complaint (Doc. 18).**

**IT IS SO ORDERED.**

**DATED: March 18, 2026**

*s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**