## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**ALBERT ADAMCYK,**

                **Plaintiff,**

**v.**

**CRISTINE VINYARD,** *et al.*,

                **Defendants.**

**Case No. 24-cv-02237-SPM**

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on a motion for summary judgment filed by Defendants Wexford Health Sources, Inc., Dr. Shah, Dr. Myers, and Pam Sessions. (Doc. 71). Defendants argue that Plaintiff Adamcyk failed to exhaust his administrative remedies prior to filing this lawsuit. Plaintiff has filed a response in opposition, and Defendants filed a reply brief. (Doc. 76, 77). For the following reasons, the Motion for Summary Judgment will be granted in part and denied in part.

### BACKGROUND

Plaintiff Albert Adamcyk, an inmate of the Illinois Department of Corrections (IDOC) currently incarcerated at Centralia Correctional Center (Centralia), initiated this action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. In the First Amended Complaint, (Doc. 82), Plaintiff claims that he has not received constitutionally adequate medical care for his carpal tunnel syndrome. Specifically, he asserts that since August 2020, he has been denied timely doctor's appointments, referrals to a specialist, surgery, and effective pain medication. Defendants Dr. Shah and Dr. Myers were Plaintiff's treating physicians at various times at Centralia. Plaintiff

asserts that Dr. Shah first treated him on August 24, 2020, and refused to refer him to a specialist for nerve related pain and numbness in his right hand because Wexford Health Sources, Inc. (Wexford), the health care provider under contract with IDOC to provide medical care to inmates, would "never approve this type of surgery." (Doc. 82, p. 8). During the following year, Plaintiff states he continued to complain about pain and numbness in his right hand, but his sick call slips were repeatedly cancelled. Plaintiff's symptoms increased, and the medication prescribed did not alleviate his pain. On September 19, 2022, Plaintiff was seen by Dr. Myers after injuring his left hand. He asserts that Dr. Myers ordered an x-ray for his left hand but did nothing to provide treatment for his right hand.

Plaintiff states that he was eventually seen by a specialist on January 27, 2023, who recommended surgery, but the surgery and follow-up appointments were delayed. While waiting for surgery, he continued to be denied medical treatment for both hands at Centralia. Doctor's appointments were canceled or not scheduled at all, and he was not given effective pain management treatment. Plaintiff eventually had surgery on his right hand on October 10, 2023, and on January 26, 2024, he received surgery on his left hand. Plaintiff alleges that Pamela Sessions is responsible for the processing and scheduling of outside medical procedures and failed to timely schedule him for appointments despite instructions from medical providers. He also claims that various practices or policies implemented by Wexford contributed to the delay and denial of care, such practices included (1) failing to timely authorize treatment and surgeries with outside provider; (2) requiring a inmate to go to nurse sick call more than once during a thirty day period before he can be seen by a doctor; (3) training nurses to only see an inmate for the issue listed on the request slip, regardless of the inmate's current condition and medical need; (4) not hiring an adequate number of doctors to work at Centralia; (5) having inmates treated by different

medical providers causing fragmented, needlessly repeated, and delayed medical care; and (6) limiting nurses and providers to only providing certain types of pain medicine regardless of efficacy.

Following a merit review of the First Amended Complaint pursuant to 28 U.S.C. § 1915A, Plaintiff is currently proceeding on an Eighth Amendment deliberate indifference claim against Defendants Wexford, Vinyard, Shah, Myers, Caldwell, Helpingstine, and Sessions. (Doc. 81).

## LEGAL STANDARDS

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). The moving party is entitled to judgment as a matter of law when the pleadings, answers to interrogatories, depositions, and admissions, along with affidavits, show that there is no genuine issue of material fact. FED. R. CIV. P. 56(c).

Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th

Cir. 2008);[1] *Roberts v. Neal,* 745 F. 3d 232, 236 (7th Cir. 2014). Where there is no disputed issue of fact, a hearing is not necessary.

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry,* 286 F. 3d 1022, 1025 (7th Cir. 2002). Furthermore, exhaustion of available administrative remedies must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

As an inmate in the custody of IDOC, Plaintiff was required to follow the grievance procedure laid out in the Illinois Administrative Code (grievance procedures). 20 ILL. ADMIN. CODE § 504.800, *et seq*. Relevant to this case are the procedures pertaining to filing emergency grievances. In order to have a grievance addressed in an expedited manner, the inmate must forward the grievance directly to the Chief Administrative Officer (CAO), who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus, the grievance should be handled on an emergency basis. 20 ILL. ADMIN. CODE § 504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender"

---

[1] The Court's ability to conduct *Pavey* hearings for evidentiary disputes on exhaustion was altered slightly by the Supreme Court's holding in *Perttu v. Richards*, 605 U.S. 460 (2025) (holding that if a factual dispute on exhaustion is intertwined with a factual dispute that goes to the merits of the underlying substantive claim, then a jury trial is required on the intertwined issue(s)). In the present case, there is no *Perttu* intertwinement issue.

indicating to him what action shall be taken. 20 ILL. ADMIN. CODE §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE § 504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

## ANALYSIS

Plaintiff cites to three grievances in arguing that he has exhausted his claim against Defendants Wexford, Dr. Shah, Dr. Myers, and Sessions. (Doc. 70, p. 28-32). The Court will first discuss Emergency Grievances #E-22-1-1 and #E-23-6-62, which were fully exhausted according to grievance procedures.

The first grievance is Emergency Grievance #E-22-11-1. (Doc. 72-1, p. 24). In this grievance, Plaintiff states that he went to the health care unit for a doctor's appointment on October 24, 2022, but a nurse did not permit him to see the doctor because it was recorded that the appointment was for a rash, and Plaintiff wanted to see the doctor for the pain and lump in his left hand instead. (Doc. 72-1, p. 24-25). He grieves, "[t]he way the HCU here at Centralia Correctional Center is operating you have to wait from two to three months before you see a doctor." (*Id.* at p. 25). Plaintiff also writes that if an inmate "is in pain and in need of some kind of outside medical treatment, they will have a long process to go through to get the proper medical treatment." (*Id.*). Because the nurse prevented him from seeing the doctor and the long wait times, he states that he is not sure when he will be scheduled to see the doctor for his hand. Plaintiff writes that his left hand is "very painful," and he does not have pain medication "since they only give you around 15 (200mg) Ibuprofen." (*Id.*). Plaintiff asks for proper medical treatment "for the pain" and "to have

Page 5 of 12

a full-time physician who can attend to our medical needs sooner." (*Id.*).

The grievance was deemed an emergency by the Chief Administrative Officer and reviewed by the Grievance Officer on November 28, 2022. (*Id.* at p. 22-23). The Grievance Officer recommended that no further review was required because it had been recorded that Plaintiff had refused treatment on October 24, 2022, and he should submit a sick call request if he has issues regarding medical treatment. (*Id.*). The Grievance Officer also found that Wexford staffing is outside the jurisdiction of the facility. (*Id.*). The Chief Administrative Officer concurred, and Plaintiff appealed. (*Id.*). The ARB denied the appeal finding that "medical treatment is determined by licensed medical professionals" and that Plaintiff had "[r]eceived 13 call passes for HCU starting from October 24, 2022." (*Id.* at p. 21).

The second grievance at issue is Emergency Grievance #E-23-6-62, dated June 10, 2023. (Doc. 72-1, p. 14). In this grievance, Plaintiff asserts that on May 25, 2023, he went to sick call to explain that his right hand is "getting worse." (*Id.*). He states that he cannot feel anything from his wrist to his fingertips and that he asked the nurse if he was scheduled to see the specialist for carpal tunnel surgery. (*Id.*). The nurse informed Plaintiff that he is "on the list awaiting for a date." (*Id.*). Plaintiff grieves that he has been waiting for several months, and his right hand is "getting worse by the day." (*Id.*). He expresses concern that he will incur permanent damage the longer he waits for surgery. (*Id.* at p. 15). Plaintiff also writes that the purpose of the grievance is to "inform the administration" that he is desperate to be sent to the specialist for surgery. (*Id.*). He states that he is also experiencing a lot of pain in his left hand and needs another cortisone shot. (*Id.*). Plaintiff grieves that the pain medication he has been given does not have any effect on his pain. He asserts that medical staff are violating his Eighth Amendment rights by delaying treatment. (*Id.*). Plaintiff seeks to be sent to the neurologist for his left hand and surgery for his right hand. (*Id.* at p. 14).

On June 14, 2023, the Chief Administrative Officer deemed the grievance an emergency. (Doc. 72-1, p. 14). The Grievance Officer forwarded the grievance to the health care unit for review. (*Id.* at p. 12). Based on the information provided by the health care unit, the Grievance Officer's response states:

> HCU Administrator states that they have requested 4 times for the approval and scheduling of a hand specialist for right carpal tunnel release. Doctor Caldwell is the facility Medical Provider and acknowledged the referral on 6/14/23. We currently have no Wexford Medical Director at this facility and Wexford Health Sources is providing physician coverage when available. Wexford Health Sources approves the scheduling of appointments and surgeries with outside providers.

(*Id.* at p. 13). The Grievance Officer recommended that the grievance be treated as "outside the jurisdiction of this facility" because Wexford is responsible for the approval and scheduling of appointments with outside providers. (*Id.*). The Chief Administrator concurred in the recommendation, and Plaintiff appealed the grievance to the ARB. The grievance was denied by the ARB on August 7, 2023, as appropriately addressed by the facility. (*Id.* at p. 11).

Defendants Wexford, Dr. Shah, Dr. Myers, and Sessions do not dispute that Plaintiff fully followed grievance procedures in submitting and appealing Emergency Grievance #E-22-11-1 and Emergency Grievance #E-23-6-62. They argue, however, that these two grievances cannot serve to exhaust Plaintiff's Eighth Amendment claim because it does not contain the requisite factual details concerning Plaintiff's allegations against them. (Doc. 72, p. 7; Doc. 77, p. 3). Defendants state that the function of submitting grievances is to provide prison officials with sufficient information about an inmate's complaints so that prison officials have a fair opportunity to address those complaints prior to the inmate filing a lawsuit. (Doc. 72, p. 7). Further, they point out that under the grievance procedures, grievances must contain "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the names of each person who is the subject of or who is otherwise involved in the complaint." (*Id.*) (quoting 20 ILL. ADMIN.

Page 7 of 12

CODE § 504.810(c)). Defendants contend that Emergency Grievances #E-22-11-1 and #E-23-6-62 do not meet these requirements. They argue the grievances fail to (1) identify them by name; (2) provide any factual details explaining what actions they each individually took with which Plaintiff has a complaint; or (3) describe when and where their alleged conduct occurred. Specifically, as to Emergency Grievance #E-22-11-1, Defendants state that the grievance solely concerns an interaction with a nurse, and Plaintiff does not claim that a doctor was even present. (Doc. 77, p. 3-4). As to Emergency Grievance #E-23-6-62, Defendants argue that the grievance response reveals that Plaintiff had not been approved for surgery by the facility medical provider, Dr. Caldwell, not because of any actions on the part of Wexford, Dr. Myers, Dr. Shah, or Sessions. (Doc. 72, p. 8). Because neither emergency grievance describes the sort of claim that is asserted in the First Amended Complaint, Wexford, Dr. Myers, Dr. Shah, and Sessions, conclude that the grievances did not exhaust Plaintiff's Eighth Amendment claim.

The Court disagrees with Defendants' arguments and finds that Emergency Grievances #E-22-11-1 and #E-23-6-62 collectively contain sufficient details to notify prison officials of Plaintiff's Eighth Amendment claim against Wexford, Dr. Myers, and Sessions concerning his medical care for his carpal tunnel syndrome to meet the requirements of the PLRA and 20 ILL. ADMIN. CODE §504.810(b).

While Emergency Grievance #E-22-11-1 starts with Plaintiff complaining about his interaction with a specific nurse on October 23, 2022, he also grieves needing to be seen for his left hand and about the medical care system at Centralia. (Doc. 72-1, p. 24-25). The Grievance Officer did not address Plaintiff's complaints concerning delays in the scheduling of medical appointments or that he did not have adequate pain medication, other than to say staffing is the responsibility of Wexford and Plaintiff should submit another sick call request slip as needed.

Regardless, this grievance makes clear that Plaintiff believed he was not seeing the onsite doctor or a specialist in a timely manner and that policies or practices concerning distribution of pain medication were resulting in ongoing hand pain. Even though not named, these complaints would suggest the involvement by Dr. Myers, one of Plaintiff's treating doctors, Pam Sessions, who is somehow involved in scheduling, and Wexford, the corporation responsible for providing medical care to inmates at Centralia. (*See* Doc. 72-1, p. 13, 23).

As to Emergency Grievance #E-23-6-62, Plaintiff provided sufficient details that officials were able to investigate his complaints concerning his need for surgery. Based on the Grievance Officer's response, there were ongoing delays in scheduling Plaintiff for off-site treatments and appointments, and the grievance implicates various staff members. The Grievance Officer writes, "This is the 4th request for approval and scheduling of the referral to the hand specialist...[,]" and according to Plaintiff's exhibits, Dr. Myers was still submitting referral reports for Plaintiff as of June 28, 2023, and Pam Sessions is mentioned in one of Dr. Myers referral reports signed January 27, 2023. (Doc. 72-1, p. 13; Doc. 76, p. 40-41). The grievance also gives notice that Plaintiff was experiencing ongoing untreated pain and that his condition was worsening and thereby informing prison officials that there was an issue not only with scheduling but also with the care Plaintiff was receiving at Centralia. (Doc. 72-1, p. 14-15).

It is also not a stretch to read the Grievance Officer's response as calling attention to issues with Wexford's practices and/or policies regarding the referral and scheduling processes. The response implies that the denial of timely and adequate medical care could have been caused by the fact that there was "no Wexford Medical Director" at Centralia, and that Centralia staff were restricted from assisting Plaintiff because Wexford was "responsible for approvals for outside medical care." (Doc. 72-1, p. 13). Thus, alerting officials that Plaintiff's complaints could be

attributed to Wexford.

Although Wexford, Dr. Myers, or Sessions are not identified by name in either grievance, this Court has repeatedly observed that not naming or describing an individual defendant in a grievance is not "fatal to the issue of exhaustion." *See e.g. Lundy v. Ill. Dep't of Corr.*, 23-cv-03809-SPM, 2025 WL 2531833, at \*4 (S.D. Ill. Sept. 3, 2025) (quoting *Arce v. Wexford Health Services,* No. 18-cv-1348-SMY-GCS, 2019 WL 6702692, at \*5 (S.D. Ill. Oct. 9, 2019)). When submitting a grievance, Plaintiff is not expected to know the innerworkings of the healthcare operations within Centralia or IDOC at large or who exactly was responsible or at fault for the issues with referrals and scheduling. *See Glick v. Walker*, 385 F. App'x 579, 582 (7th Cir. 2010) ("it would be unreasonable to expect that, for every set of facts, an inmate will be able to peel back layers of bureaucracy and match a disputed decision with the prison employee responsible for that decision."); *Dawson v. Baldwin*, No. 19 C 50058, 2021 WL 3917023, at \*7 (N.D. Ill. July 30, 2021) (noting that the grievance process is "silent regarding what happens when the inmate is not necessarily complaining about a specific person or when the inmate has no idea who is responsible for the problem"). It is not surprising that Plaintiff would not have known which doctor, nurse practitioner, or other provider to name in the grievances and who exactly was responsible for his care. According to the First Amended Complaint, Plaintiff was treated by more than five different providers at Centralia from 2020 through 2025. (*See* Doc. 82, p.13). Plaintiff was required to identify individuals to the extent necessary to serve a grievance's function of giving "prison officials a fair opportunity to address his complaints.'" *Maddox v. Love*, 655 F. 3d 709, 722 (7th Cir. 2011)). As discussed, Emergency Grievances #E-22-11-1 and #E-23-6-62 meet this purpose as to Wexford, Dr. Myers, and Sessions, and Plaintiff has exhausted his Eighth Amendment claim against them.

The same cannot be said, however, for Dr. Shah. Plaintiff is proceeding on an Eighth Amendment claim against Dr. Shah for refusing to refer him to a specialist on August 24, 2020, based on a Wexford policy rather than medical judgment. (*See* Doc. 82, p. 8). According to the First Amended Complaint, this appointment was the first time Plaintiff had been seen at Centralia for complaints of nerve-related pain and numbness in his right hand. During the appointment, Dr. Shah prescribed Plaintiff a CTS brace and ordered x-rays. (*Id.*). Plaintiff asserts that he had not been able to be seen at sick call sooner because of the pandemic. He states that following a later appointment with a different doctor, Dr. Pelegrin, on November 2, 2020, he started to complain about ongoing pain and numbness in his hands, but his sick call requests were cancelled many times. He did not, however, file a grievance regarding the lack of medical treatment for his carpal tunnel syndrome until October 24, 2022, when he filed Emergency Grievance #E-22-11-1, discussed above. (Doc. 76, p. 19).

Neither Emergency Grievances #E-22-11-1 nor #E-23-6-62 contain details notifying prison officials of Plaintiff's allegations against Dr. Shah, which solely concern the specific treatment provided, or not provided, on August 24, 2020. This appointment occurred before Plaintiff began experiencing delays and denial of care because needed appointments in and outside the facility were not being scheduled, and Centralia providers were providing knowingly ineffective treatment. Accordingly, these grievances do not exhaust Plaintiff's claim against Dr. Shah.

The third relevant grievance cited by Plaintiff is Emergency Grievance #E-23-3-64, dated March 16, 2023. The parties disagree on whether Emergency Grievance #E-23-3-64 was fully exhausted. (Doc. 72-2, p. 80-81). Assuming that it was, it too pertains to long wait times for an appointment to see a doctor at Centralia, Plaintiff's request for surgery on his hand to be scheduled,

and his untreated pain. (*Id.*). Nothing alerts prison officials that Plaintiff believed the care Dr. Shah

provided in August 2020 was unsatisfactory. Accordingly, Plaintiff has failed to exhaust his claim

against Dr. Shah, and he will be dismissed without prejudice as a defendant in this case.

### DISPOSITION

For the reasons provided, the Motion for Summary Judgment on the Issue of Exhaustion

of Administrative Remedies filed by Defendants Wexford, Shah, Myers, and Sessions is

**GRANTED in part** and **DENIED in part**. (Doc. 71). The claims against Defendant Dr. Shah, as

asserted in Count 1, are **DISMISSED without prejudice** for Plaintiff's failure to exhaust. The

Clerk of Court is **DIRECTED** to terminate Dr. Shah as a party on the docket and enter judgment

accordingly at the end of this litigation.

**IT IS SO ORDERED.**

**DATED: March 23, 2026**

    *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

Page 12 of 12